**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CASE NO.

JOEL PRICE,

      Plaintiff,

v.

CITY OF ST. AUGUSTINE, FLORIDA

      Defendant,

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

COMES NOW Plaintiff Joel Price ("Plaintiff), by and through his undersigned counsel, and hereby sues Defendant City of St. Augustine, Florida ("Defendant" or "City of St. Augustine") for declaratory and injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12131 et. seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and alleges as follows:

**<u>INTRODUCTION</u>**

1.   This is an action under Title II of the Americans with Disabilities Act of 1990 and under Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is enforced to redress unlawful disability-based practices and to make Plaintiff Joel Price whole.

2.   Defendant has directly violated Department of Justice Guidelines for document publishing.

1

3. Defendant does not have an electronic document publishing policy.

4. As of the date of this filing, Defendant has not responded to Plaintiff's request for accommodation.

5. Defendant City of St. Augustine, Florida is a public entity which has provided the electronic documents related to the City of St. Augustine government.

6. The document creation, storage and archiving is a program, service, and activity of the City of St. Augustine. Much of that content is provided in portable document format ("PDF"). While the documents are currently stored on the www.citystaug.com website, the documents are not inextricably tied to the website. The documents can be stored on any digital store device or media such as a thumb drive, compact disc, external hard drive or DVD. Neither the internet nor a website is needed to access or use the documents.

7. A majority of the Defendant's electronic documents were created in an accessible format, and then Defendant took affirmative action to make them inaccessible.

8. Defendant has denied Plaintiff his fundamental right to observe and participate in the democratic process of self-government. A citizen's right to meaningful participation in the political process and to access publicly available information needed to participate in the process is a fundamental right requiring heightened scrutiny. *Johnny Reininger, Jr. v. State of Oklahoma*, Case No.: 5:16-cv-012141 (November 9, 2017) and *Natl Association of the Deaf (NAD) v State of Florida*, 318 F. Supp. 3d 1338 (S.D. Fla. 2018). The First Amendment to the United States Constitution guarantees citizens the right to petition government for redress of grievances. City of St. Augustine has violated (and continues to violate) Plaintiff's constitutional right to petition the City of St. Augustine government because it denies him equal access to the publicly available

information needed to exercise this right.

9. Plaintiff brings this action against the Defendant to enforce the requirement of Section 504 of the Rehabilitation Act that a public entity receiving or distributing federal financial assistance (which Defendant receives and distributes each year) must not deny persons with disabilities the benefits of its programs, services and activities.

10. By failing to provide electronic documents in accessible format, Defendant has deprived blind, visually impaired and low sighted individuals of the benefits of its published content and in so doing has engaged in discriminatory practices.

11. Defendant's denial of much of its publicly available online content to blind and visually impaired individuals violates Section 504 of the Rehabilitation Act and Title II of the ADA and the basic tenants of the Civil Rights Act.

## JURISDICTION AND VENUE

12. Plaintiff is expressly authorized to bring this action pursuant to Title II of the ADA, 42 U.S.C. §§ 12131-12133, incorporating by reference the remedies, procedures and rights under Sections 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, §794(a) ("Section 504"), incorporating the remedies, rights and procedures set forth in §717 of the Civil Rights Act of 1964, including the application of §706(f) through §706(k), 42 U.S.C. §§2000e-5(f)-(k).

13. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12188. This Court's jurisdiction is proper under 28 U.S.C. §§ 451, 1331, 1337, and 1343.

14. Plaintiff has met all conditions precedent to bring this action.

## PARTIES

### Joel Price

15.  Plaintiff Joel Price is a veteran of the U.S. Navy, a resident of the State of Florida, and a qualified individual as defined by the ADA. He lives in Volusia County Florida.  Plaintiff lives in Volusia County which is a short distance to the City of St. Augustine, Florida.

16.  Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §35.108, as Plaintiff is substantially limited in the major life activity of seeing, specifically 28 C.F.R. §35.108(c)(1).

17. Plaintiff advocates for the disabled and for veterans in the state of Florida. He relies on publicly available information to aid in his advocacy and participation in the political process. Much of the publicly available information is in a portable document format (PDF) and is stored or archived on public entity websites.

18. Due to his disability, the Plaintiff requires that document information be saved in an accessible format such as HTML or an accessible electronic format so that he can comprehend (read) that document with screen reader software.

19. Plaintiff is a qualified and/or otherwise qualified individual with a disability. Plaintiff's interest in public discourse and public services and Defendant's failure to provide that information to Plaintiff as it provides to the non-disabled public fall within the zone of interest which the RA and Title II of the ADA protect, thus qualifies Plaintiff as a person who has been subjected to unlawful discrimination. (see, *Bank of America v City of Miami* 137 S. Ct. 1296 (2017)).

**City of St. Augustine, Florida**

20.  Defendant City of St. Augustine, Florida (also referenced as "City of St. Augustine") is a local government entity, a body corporate and political subdivision of the State of Florida.  Founded in 1565, St. Augustine is the oldest continuously occupied settlement of European and African origin in the United States. Not until 1845 was Florida accepted into the union as a state.

21.  City of St. Augustine, Florida Home Rule gives the City of St. Augustine City Commissioners the ability to create (through a local public hearing ordinance procedure) local laws[1].  This process is done without having to go to the Florida Legislature to request special legislation to create these laws. The City Commission is the governing body of the City.  Its members are directly elected by the people of the City of St. Augustine. The City Commission appoints a City Manager who implements City of St. Augustine the policy and laws and manages the governmental agencies and departments of the City of St. Augustine. The City Commission distributes federal financial assistance through its budgetary and legislative process to the City of St. Augustine agencies and departments. No person, agency or department is above the City Commission.

22.  Since Defendant is a public it is subject to Title II of the ADA. 42 U.S.C. §12131(1).

23.  On information and belief, Defendant is also a recipient and distributor of federal funds and as such, is also subject to the requirements of Sections 504 of the Rehabilitation Act of 1973.

## GENERAL ALLEGATIONS

24.  As further set forth in detail below, when Plaintiff went to the City of St.

---

[1] that are not in conflict with or specifically prohibited by state general law or the Florida Constitution

Augustine website to view its documents in March and April of 2019, they were not accessible to persons using a screen reader, causing him an injury in fact because he is in the zone of interest covered under the ADA and the Rehabilitation Act.   Defendant caused the injury when it failed to comply with the ADA and the Rehabilitation Act. Plaintiff plans to visit the City of St. Augustine website in the near future (*see Houston v. Morad Supermarkets, Inc*. 733 F.3d 1323 (11th Cir. 2013) and will continue to suffer further discrimination because Defendant refuses to comply with the ADA and Rehabilitation Acts.  Any future injury will be redressed by a favorable decision from this Court requiring Defendant to comply with the law.  Plaintiff has standing consistent with the requirements the Eleventh Circuit set forth in *Houston*. Plaintiff is an interested person because he (as a blind individual) sought to receive documents from the City in an accessible format, followed the statutory scheme as intended by Congress and the City has failed to accommodate Plaintiff and has suffered injury in fact as a result of the City's discrimination.

25.  Defendant offers a service through its online portal www.citystaug.com where interested persons can obtain pertinent information regarding the government of City of St. Augustine. This information aids persons who advocate public policy on behalf of themselves or others. Plaintiff is such a person.  He is interested in City of St. Augustine policies as they relate to the disabled and infirm using the City of St. Augustine's services, programs and activities.

26.  Plaintiff currently resides in Daytona Beach, which is in Volusia County. Plaintiff (along with his service animal) has been discriminated against and has been the victim of several assaults which has generated a sense of unease and fear. Plaintiff is therefore considering moving where the crime rate is lower and the services for the

disabled friendlier. Plaintiff is also seeking communities which have a large veteran population and which are veteran-friendly. Based on Plaintiff's research, City of St. Augustine is a viable option since the City of St. Augustine has a viable community of veterans and offers services for the disabled community.

27.  For Daytona Beach, the overall crime rate is 131% higher than the average of crimes committed in Florida; it is also 146% higher than the national average. When it comes to violent crimes, Daytona Beach has a crime rate that is 171% higher than the Florida average and 189% higher than the national average. When it comes to property crimes, Daytona Beach is shown to be 125% higher than the Florida average and 139% higher than the national average[2].

28.  In the course of Plaintiff's travels around Florida, he has visited City of St. Augustine and found the residents he met in the general course of his day to be friendly and helpful. In particular Plaintiff is drawn to the fact that St. Augustine is steeped in history and has enjoyed spending time in the historical churches, museums, and other the historical sites which are a major component of St. Augustine culture. While visiting the City of St. Augustine (specifically the Butler Beach area) Plaintiff felt safe and welcome.

29.  Based on Plaintiff's research, City of St. Augustine has a population of 14,576[3], of which 1,318 are veterans (which represents 9% of the population)[4].  Based on Plaintiff's research the City of St. Augustine's violent crime rate is 7.02 and its property

---

[2] https://www.areavibes.com/daytona+beach-fl/crime/
[3] https://www.census.gov/search-results.html?q=city+of+st.+augustine+&page=1&stateGeo=none&searchtype=web&cssp=SERP&_charset_=UTF-8
[4] https://www.census.gov/search-results.html?q=city+of+st.+augustine+&page=1&stateGeo=none&searchtype=web&cssp=SERP&_charset_=UTF-8

crime rate is 36.02[5](Compared with Daytona Beach's violent crime rate of 11.01 and property crime rate of 56.31). Based upon Plaintiff's initial research, the City of St. Augustine has presented as a viable living option.

30.  Defendant provides pertinent information on living and visiting City of St. Augustine including (but not limited to): Event Venue Guidelines[6], The Four Steps to Disaster Preparedness[7], a 2019 Summer pool Schedule[8], and a ParkNow Card service[9]. These types of documents are made available by Defendant to generally inform the public of the services provided by Defendant; therefore, this type of electronic documents also referenced herein as "electronic service documents."

31.  Defendant's electronic documents provide information on City of St. Augustine policies and positions which affect the public directly. A sampling of those links to electronic documents ("electronic policy documents") is provided herein below:

•  City of St. Augustine Fire Department Special Event Rules[10], which links to an electronic document on fire prevention rules;
•  Ordinance No. 2019-02[11], which links to various City of St. Augustine policies including regulations regarding public sidewalks;
•  Ordinance No. 2018-16[12], which links directly to an electronic document on requirements/prohibitions regarding events, protest, and counter-protests.

32.  City of St. Augustine's Commissioner's meetings have a direct effect on the lives of residents of City of St. Augustine (in particular) and citizens of the state of Florida (in general). Interested persons can become informed about the effect of City of St. Augustine Commissioner's meetings and the resulting policies, budgets, and services online by viewing the electronic documents generated which reflect the decisions made

---

[5] https://www.neighborhoodscout.com/fl/st-augustine/crime
[6] http://www.citystaug.com/document_center/PublicAffairs/EventVenueGuidelines2016.pdf
[7] http://www.citystaug.com/document_center/PublicSafety/Firedepartment/4StepsHurricane.pdf
[8] http://www.citystaug.com/document_center/GeneralServices/Pool/GalimorePool2019.pdf
[9] http://www.citystaug.com/document_center/FinancialServices/ParkNow.pdf
[10] http://www.citystaug.com/document_center/PublicSafety/Firedepartment/FDSpecialEventRules.pdf
[11] http://www.citystaug.com/document_center/Administration/CommissionMeetings/2019/Ord2019-02.pdf
[12] http://www.citystaug.com/document_center/Administration/CommissionMeetings/2018/Ord2018-16.pdf

by City of St. Augustine Commissioners through this portal. Interested persons are able to view thousands of documents related to the government of City of St. Augustine ("electronic agenda documents") through this portal.  An example of electronic agenda documents include: a City of St. Augustine Agenda for May 2019[13] and a City of St. Augustine 2019 Final Budget[14].

33.  Through perusing the agenda documents, interested persons can ascertain what legislation and projects are being considered regarding important disability policies for many of the City's programs, services and activities.

34.  Plaintiff is interested in public policy, resolutions, minutes, and ordinances which relate to disability policy regarding such issues as healthcare, transportation for disabled, elections, senior citizen services[15], affordable housing, parks and recreation, sidewalks[16], pedestrian safety, law enforcement training to handle encounters with persons who are deaf or have autism and other matters. These policy documents will inform Plaintiff's advocacy regarding disability rights and accessibility to the City's programs, services and activities for persons with disabilities. A sampling of  links to electronic documents ("electronic policy documents") is provided herein below:

- A Historical Architecture Review Board May 2019 Agenda[17], which referenced building design standards and alterations;

- City of St. Augustine January 2019 Minutes[18] where the board discussed items such as motions regarding structural changes;

- Resolution No. 2019-02[19], which links to a document that pertains to the legislative funding of an Operation New Hope satellite facility in the City of St. Augustine;

---

[13] http://www.citystaug.com/document_center/Administration/PZB/2019/AgendaPZB05072019.pdf
[14] http://www.citystaug.com/document_center/FinancialServices/Budget/2019BudgetBook.pdf
[15] Seniors may not be disabled, but as they age they are effected by issues commonly associated with disabilities such as loss of vision, hearing and mobility challenges.
[16] Plaintiff is blind.  Sidewalks that are not properly maintained can cause him to trip or fall.
[17] http://www.citystaug.com/document_center/Administration/HARB/2019/HARBAgenda05-23-19.pdf
[18] http://www.citystaug.com/document_center/Administration/HARB/2019/HARBminutes011719.pdf
[19] http://www.citystaug.com/document_center/Administration/CommissionMeetings/2019/Res2019-02.pdf

- A City of St. Augustine Proclamations Policy[20] which links to a policy concerning the encouragement of public awareness for City events and activities.

35.  Defendant provides publications to the public which are also in electronic service document format. These publications contain information on a variety of City of St. Augustine issues. A few of the publications provided to the public by Defendant include (but are not limited to): Housing Discrimination Complaint instructions[21], an Arbor Day Flyer[22] and a Talking Trash article[23]. These publications are made available by Defendant to inform the public of up-to-date (current and pertinent) information for residents and visitors of City of St. Augustine regarding services provided by Defendant to the public (visitors, businesses, and residents).

36.  Online "on-demand" viewing of the Defendant's electronic documents is not an option available to persons with vision disabilities due to the fact that those documents are provided solely in a *PDF flat surface* format and do not interface with screen reader software as used by blind and visually impaired individuals. Plaintiff (who is legally blind) is such an interested person.

37.  In March 2019 Plaintiff attempted to view Defendant's electronic documents to prepare for constitutionally protected advocacy activities for the disabled and infirm as set forth in paragraph 18, *supra*.

38.  Because Defendant's electronic documents are published in violation of DOJ policy as they are discriminatory on their fact and effect. Defendant's electronic documents are not provided in an accessible format for the blind and visually impaired and are not provided in accessible HTML or PDF format, such that Plaintiff has been

---

[20] http://www.citystaug.com/document_center/Administration/CityClerk/ClerkProclamationPolicy.pdf
[21] http://www.citystaug.com/document_center/Administration/Legal/HousingDiscriminationComplaintFormInstructions.pdf
[22] http://www.citystaug.com/document_center/PublicAffairs/2019ArborDayFlyer.pdf
[23] http://www.citystaug.com/document_center/Publicworks/SolidWaste/TalkingTrashResFlyer1a.pdf

prevented from becoming informed about the City of St. Augustine's governmental functioning, policies, programs, services and activities that Defendant offers to the disabled and infirm, because of his vision disability.

39.  This exclusion resulted in Plaintiff suffering from feelings of segregation, rejection, and isolation.

40.  Due to his inability to comprehend Defendant's electronic documents, on March 5, 2019 Plaintiff wrote a letter to Defendant and informed Defendant that he is legally blind and unable to fully access the electronic documents which Defendant provides to the public with his screen reader software. In that letter, Plaintiff requested Defendant's electronic documents be provided in an accessible format for blind and visually impaired individuals (such as himself). Plaintiff made this request via U.S. mail service.  Plaintiff's letter request is attached hereto as Exhibit A.

41.  In April 2019, Plaintiff again attempted to access Defendant's electronic documents, but those electronic documents remained inaccessible as he still could not comprehend them with his screen reader software. It is sufficiently obvious that Plaintiff and others who are blind or low sighted need Defendant to properly save its documents so that they are accessible on demand and permit such persons to benefit from the services, programs and activities.

42.  Plaintiff has concrete plans to move from Daytona Beach in the near future and the City of St. Augustine presents as a viable living option.  Plaintiff will be able to assess his ability to move to the City of St. Augustine once he is able to access all of the services and benefits which the City of St. Augustine offers through the City of St. Augustine's electronic documents (which are currently inaccessible to Plaintiff). (see *Houston v Marod Supermarkets, Inc.* 733 F.3d 1323, 1340 (2

43. Plaintiff continues to desire to advocate on behalf of the disabled and infirmed within the City of St. Augustine. However, Plaintiff is unable to undertake his constitutionally protected activities, as he is unable to meaningfully access and comprehend the electronic documents provided by Defendant for the public.

44. Furthermore, Defendant has not provided any other auxiliary aid or service which would assist Plaintiff and/or similarly situated blind or visually impaired constituents to meaningfully access and fully comprehend Defendant's electronic documents in the same manner as Defendant has as made available to the non-disabled public.

45. Because Defendant has not provided its electronic documents in an accessible format for the blind and visually impaired, Plaintiff was left excluded from political advocacy with the City of St. Augustine's government.

46. Plaintiff's inability to access Defendant's electronic documents has resulted in a *virtual barrier* which has impaired, obstructed, hindered, and impeded Plaintiff's ability to become an involved citizen in advocating for the disabled in the City of St. Augustine government and learn about the programs, services and activities available to disabled residents to (and visitors of) the City of St. Augustine.

47. On information and belief, since March 2019 when Plaintiff first began to attempt to access and learn about the City of St. Augustine's programs, services, activities and government, Defendant has not made reasonable modifications to its policies and procedures to ensure future compliance with the ADA and/or the Rehabilitation Act.

48. As of this filing, the electronic documents made available by Defendant remain inaccessible to Plaintiff as well as to other blind and visually disabled individuals.

49. Plaintiff continues to desire to advocate for an inclusive government policy

within the City of St. Augustine government. He needs to be fully informed about past actions and policies before advocating for changes in current policy. However, Plaintiff is unable to do so, as he is unable to meaningfully access and comprehend the electronic documents provided by Defendant for the public.

50.  By Defendant's failure to make the electronic documents accessible, Plaintiff has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from enjoying the programs, services and activities offered by Defendant to the public.

51.  Plaintiff will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices regarding its electronic documents unless enjoined by this Court.

52.  Defendant has engaged (and continues to engage) in unlawful practices in violation of Title II of the ADA (42 U.S.C. §12132 and Section 504).

53.  Defendant's unlawful practices include (but are not limited to) denying Plaintiff (an individual with a disability) the ability to participate in City of St. Augustine government and to participate in the City of St. Augustine's community programs, services and activities by failing to provide Plaintiff the ability to study and review the City of St. Augustine's electronic documents in the same manner as provided to the sighted public.

54.  Defendant is deliberately indifferent to the provisions of the Rehabilitation Act and Title II of the ADA in regard to the unlawful practices described herein because Defendant is aware of the availability of computer programs which allow Defendant to save electronic documents in an accessible format. Despite the ease of providing accessible electronic documents, Defendant has failed to reasonably modify its policies,

13

processes and procedures for the same.

55.  As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish.

56.  For all of the foregoing, Plaintiff has no adequate remedy at law.

57.  Plaintiff has retained Scott Dinin P.A. and J. Courtney Cunningham PLLC as his legal counsel in this action and has agreed to pay a reasonable attorney fee.

## COUNT I – VIOLATIONS OF TITLE II OF THE ADA

58.  Defendant's document creation and storage is a program, service, or activity within the definition of Title II of the ADA. Defendant makes information available in thousands of pages of documents available through its information portal from which the public can access electronic documents.

59.  The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life and that mandate extends to public entities including Defendant and the documents that Defendant provides to the public (including those documents provided in electronic document format).

60.  The Department of Justice ("DOJ") addressed PDF document publishing by Title II entities in 2003 and 2008.  The DOJ mandated through Department Technical Guidance that if a Title II entity were going to publishing electronic documents on the Internet through the World Wide Web, they must offer those documents in an accessible format i.e.: HTML.

61.  The DOJ guidelines on the application of Title II of the ADA state:

"[T]he Department has taken the position that title II covers Internet Web site access. Public entities that choose to provide services through web-based applications (e.g., renewing library books or driver's licenses) or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information, unless doing so would result in an undue financial and administrative burden or a fundamental alteration in the nature of the programs, services, or activities being offered."  28 C.F.R. Pt. 35 app. A, page 126.

62.  Title II of the ADA mandates that no qualified individual with a disability shall, by reason of such disability, be excluded from full and equal participation in or be denied the benefits of the services, programs, or activities of a public entity, or *be subjected to discrimination by any such entity*, 42 U.S.C. §12132.

63.  Historically, Congress' statutory intent has been to construe Civil Rights legislation broadly. The interpretation of causation is based on proximate (not remote) cause. In *Bank of America*, the Supreme Court affirmed that proximate cause is controlled by the nature of the statutory cause of action (quoting from *Lexmark Intl' Inc. v. Static Control Components, Inc.* 572 U.S. (2014)). In Civil Rights violations, proximate cause requires a direct relation between the injury asserted and the injurious conduct. The interconnection of the right to participate in government and social programs and economic and social life is fluid and multi-dimensional such that a violation of civil rights causes ripples of harm to flow. *Bank of* America  (quoting from *Ass. Gen. Contractors of Cal. Inc. v. Carpenter,* 459 U.S. 519, 534 (1983)). In *Bank of America*, the Supreme Court held that Congress has not legislated (drawn) precise boundaries on the application of proximate cause for civil rights violations and instructed the lower court to define the contours of proximate cause based on the facts and circumstances of the underlying action. Thus, as a disabled individual, the instant Plaintiff has established standing.   In considering the tester's standing, the Supreme Court in *Havens Realty* explained that the

"'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 373, 102 S.Ct. at 1121 (alterations adopted) (quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").

64.   In *Bledsoe v.  Palm Beach County Soil & Water Conservation District*, 133 F.3d 816, 821-22 (11th Cir. 1998) and *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085, (11th Cir. 2007), the Eleventh Circuit explained that "subjected to discrimination by any such entity" is *not* directly tied to "services, programs or activities" of the public entity.  Instead, *subjected to discrimination by any such entity* "is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context."  *Bledsoe* at 822. Therefore, discrimination by a public entity is prohibited regardless of whether such discrimination involves a service, program or activity.

65.   Defendant City of St. Augustine, Florida is a political subdivision of the State of Florida and a public entity under Title II of the ADA. A public entity includes any instrumentality of a state or local government, therefore Defendant is subject to Title II of the ADA.  42 U.S.C. §12131(1)(b).

66.   As a public entity, Defendant must:

a)     Provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. §35.130(a).

b)     Ensure that no individual with a disability is excluded, denied

services, segregated, or otherwise treated differently than other individuals unless the public entity can demonstrate that taking those steps to modify policies, practices, or procedures would fundamentally alter the nature of the service, program, or activity; 28 C.F.R. §35.130(b)(7).

c) Ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals unless the public entity can demonstrate that legitimate safety requirements are necessary for safe operation. Any safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities; 28 C.F.R. §35.130(h).

67. Defendant is a recipient of federal financial assistance. As a condition precedent to receiving such assistance, Defendant must affirm that it is in compliance with federal anti-discrimination laws including the Rehabilitation Act of 1973 and the ADA. Defendant has consistently and repeatedly affirmed such compliance to the federal funding agencies when it knows that it is not complying with those laws based upon the DOJ Technical Guidance first issued in 2003 and updated in 2008.

68. Defendant failed to provide its electronic documents in a format accessible to visually impaired individuals who require screen reader software to comprehend those electronic documents despite the sufficiently obvious need to do so. Therefore, Plaintiff has been effectively denied access to those electronic documents by Defendant.

69. By denying Plaintiff the opportunity to comprehend and benefit from its electronic documents due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in or benefit from the services, programs or activities afforded to non-disabled persons and persons who are not visually impaired and

has therefore subjected Plaintiff to discrimination.

70.   Providing electronic documents in a format that can be recognized by screen reader software and therefore making those electronic documents accessible to the visually impaired would not result in any undue burden to Defendant.

71.   Providing electronic documents in a format that can be recognized by screen reader software thereby making those electronic documents accessible to the visually impaired would not fundamentally change the nature of Defendant's services, programs, or activities.

72.   Defendant is required to provide full and equal enjoyment of its services, programs, and activities in the most integrated setting appropriate to people with disabilities; 42 U.S.C. §12131, *et. seq.*; 28 C.F.R. Part 35.

73.   As a result of the virtual barriers within the electronic documents provided by Defendant, visually impaired individuals are denied the full and equal access to the services, programs, and activities offered by the City of St. Augustine and have been denied participation in the government of the City of St. Augustine in a manner equal to that afforded to others; in derogation of Title II of the ADA and Section 504.

74.   As a public entity, Defendant may not (directly or through contractual or other arrangements) utilize methods of administration that deny individuals with disabilities access to its services, programs, and activities or that perpetuate the discrimination of another public entity; 28 C.F.R. § 35.130(b)(3).

75.   As a public entity and pursuant to Title II, Defendant is required to make reasonable modifications in its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of

the service, program, or activity; 28 C.F.R. § 35.130(b)(7).

76.  Defendant is required to present the electronic documents it provides to the public in an accessible format in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

77.  Defendant's failure to make its electronic documents accessible has impeded Plaintiff from accessing the publicly available information required to advocate for the disabled and infirm. However, the City of St. Augustine made this information available to the non-disabled so that they can participate in the services and programs of the City of St. Augustine and advocate on any topic they wish. By such failure, Defendant has discriminated against the visually impaired.

78.  Defendant is blatantly discriminating by its failure to provide accessible electronic documents for blind and visually impaired citizens. Defendant has violated Title II of the ADA in numerous ways, including discriminatory action which occurred when the Defendant failed to maintain policies and procedures to ensure compliance with Title II of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's electronic documents provided within its Website. These violations are ongoing.

79.  As a result of Defendant's inadequate creation, development, and administration of Defendant's electronic documents, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

**COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

80.  Plaintiff is legally blind, which substantially limits him in his major life activity of seeing. Therefore, Plaintiff is an otherwise qualified individual with a disability

under Section 504 of the Rehabilitation Act and a person who has suffered discrimination caused by Defendant.

81.  In *Nat'l Ass'n of Deaf v. State*, 318 F.Supp. 3d 1338, 1348 (SD Fla 2018) at *5 (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) the court found that "[t]he elements of a Title II claim and a section 504 Rehabilitation Act claim are the same," and can be addressed together.

82.  As an otherwise qualified individual, Plaintiff is expressly authorized under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 & 794(a), incorporating the remedies, rights and procedures set forth in Section 717 of the Civil Rights Act of 1964, including the application of §§ 706(f) - (k), 42 U.S.C. §§ 2000e (5)(f) - (k).

83.  On information and belief, Defendant is a recipient of federal financial assistance. The City of St. Augustine City Commission distributes that federal financial assistance to its agencies and departments through its budgetary and legislative activities. As the distributor of federal financial assistance, *all of the operations* of the City of St. Augustine City Commission (including Defendant's document creation and archives) are subject to the Rehabilitation Act as a covered program or activity; 29 U.S.C. §794(b)(1)(B).

84.  Congress enacted the Rehabilitation Act in 1973 to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance "… be carried out in a manner consistent with the principles of … inclusion, integration, and full participation of the individuals [with disabilities]."  (codified at 29 U.S.C. §701(c)(3))

85.  Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating against disabled persons and requires that programs or activities

operated by a federally-funded entity be readily accessible to persons with disabilities; 28 C.F.R. §42.520.

86.  For the purposes of Rehabilitation Act claims, the term "program or activity" means all of the operations the entity of the State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended; 29 U.S.C. Section 504, §794(b)(1)(B).

87. Section 504 of the Rehabilitation Act, 29 U.S.C. §794 requires that no otherwise qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to otherwise be discriminated against.

88. The Rehabilitation Act defines "program or activity" to mean all of the operations of an entity of state or local government which distributes federal financial assistance.   The City of St. Augustine City Commission is an entity of state or local government that distributes federal financial assistance, all of the operations of the City of St. Augustine are covered under the Rehabilitation Act including the City of St. Augustine's creation, storage and providing electronic documents to the public. For the purposes of this section, the term "program or activity" consists of all of the operations of a department, agency, special purpose district, or other instrumentality of a state or of a local government; 29 U.S.C. §794(b)(1)(A).

89.  By failing to make its electronic documents accessible to the visually disabled City of St. Augustine has denied access to its services, programs and/or activities to the visually disabled, which has subjected Plaintiff to discrimination, excluded Plaintiff from participation (in those services, programs and/or activities), and denied Plaintiff the benefits of Defendant's electronic documents.

90. As of this filing, Defendant's electronic documents are inaccessible to persons who are blind and/or low sighted and use screen readers to comprehend the internet, but are accessible to persons without vision disabilities.

91. Specifically, as related to violations of Section 504, blind and visually impaired individuals need to comprehend and access the electronic documents which Defendant provides to the public. Yet, Defendant's electronic documents are not saved in an accessible format which properly interfaces with screen reader software so that blind and visually impaired individuals are able to comprehend those documents.

92. As a distributor of federal funds and pursuant to Section 504 the Defendant may not deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service; 45 CFR §84.4(b)(1)(i).

93. As a distributor of federal funds and pursuant to Section 504 the Defendant may not afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; 45 CFR §84.4(b)(1)(ii).

94. As a distributor of federal funds and pursuant to Section 504 the Defendant may not provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others; 45 CFR §84.4 (b)(1)(iii).

95. As a distributor of federal funds and pursuant to Section 504 the Defendant may not provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others; 45 CFR §84.4 (b)(1)(iv).

96.    Plaintiff has been denied the ability to comprehend electronic documents provided by Defendant which would permit Plaintiff to access the programs, services and activities of the City of St. Augustine and to advocate for the disabled and infirm with respect to the City of St. Augustine government. As a distributor of federal funds and pursuant to Section 504, Defendant may not otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service; 45 CFR §84.4(b)(1)(vii).

97.    As a distributor of federal funds and pursuant to Section 504, Defendant may not (directly or through contractual or other arrangements) utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same state; 45 CFR §84.4(b)(4).

98.    As a distributor of federal funds and pursuant to Section 504, Defendant is required to evaluate (with the assistance of interested persons including handicapped persons or organizations representing handicapped persons) its current policies and practices and the effects thereof that do not or may not meet the requirements of this part; 45 CFR §84.6(c)(1)(i).

99.    As a distributor of federal funds and pursuant to Section 504, Defendant is required to modify, after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), any policies and practices that fail to meet the requirements of this part; 45 CFR §84.6(c)(1)(ii).

100.    As a distributor of federal funds and pursuant to Section 504, Defendant is required to take, after consultation with interested persons (including handicapped persons or organizations representing handicapped persons), appropriate remedial steps to eliminate the effects of any discrimination that resulted from adherence to these policies and practices; 45 CFR §84.6(c)(1)(iii).

101.    As a distributor of federal funds and pursuant to Section 504, Defendant is required to designate at least one person to coordinate its efforts to adopt grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by this part; 45 CFR §84.7(a) & (b).

102.    Defendant has discriminated against Plaintiff (and other individuals with visual impairments) in the unequal provision of the electronic documents which Defendant provides to the public.  As a result, Plaintiff has experienced exclusion, segregation, mental anguish, and humiliation in violation of his civil rights.

103.    Defendant's policies, practices and procedures, particularly the actions and omissions described above have violated Plaintiff's rights under Section 504 by discriminating on the basis of a disability.

104.    As a public entity, Defendant knows or should know of the 2003 guidelines provided by the DOJ which require public entities to provide information to the public in accessible format.

105.    Defendant has failed to act on the likelihood of harm each time it has created and archived documents without addressing the accessibility of those electronic documents for blind and visually impaired individuals. Thus, Defendant has demonstrated deliberate indifference to Plaintiff's federally protected rights in failing to provide equal

access to its services, programs and/or activities for blind and visually impaired individuals.

106.    By Defendant's failure to make electronic documents accessible or to otherwise respond to Plaintiff's request for accommodation in a meaningful manner (requested by Plaintiff on March 5, 2019 via U.S. mail) Defendant's actions further reflect its deliberate indifference to the rights of Plaintiff based on Plaintiff's disability.

107.    While in this instance Plaintiff requested accommodation from Defendant, no request for an accommodation is necessary to plead a claim for failure to accommodate where the need for such an accommodation is obvious. See *Wilson v. Broward Cty.,* No. 04-61068, 2006 WL 8431515, at *3 (S.D. Fla. Jan. 13, 2006)(denying a motion to dismiss in a Title II case where plaintiff claimed that his need for accommodation was obvious).

108.    The ongoing and continuous act of failing to provide effective communication goes beyond gross negligence. Thus, Defendant is in violation of Section 504 of the Rehabilitation Act. See: *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, (11th Cir. 2012).

109.    The standard for deliberate indifference as set forth in *Liese v Indian River County Hospital District*, No. 10-15968 (11th Cir. Nov 13, 2012); See: "[D]eliberate indifference defined in the context as occurring when "the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood," the *Liese* court, quoting from *T.W. ex.rel. Wilson v. Sch. Bd of Seminole Cnty., Fla*., 610 F.3d at 604 (11th Cir.2010); accord *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 275 (2d Cir.2009); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir.2009); *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir.2001); see Fig. 1



Fig. 1

110.    Plaintiff has met the standard for deliberate indifference established in *McCollum v Orlando Reg'l Healthcare Sys., Inc.,* 768 F.3d 1135, 1147 (11th Cir 2014): "a plaintiff must show that the defendant 'knew that harm to a federally protected right was substantially likely' and 'failed to act on that likelihood.'" (emphasis omitted) (quoting *Liese*, 701 F.3d at 344), which standard was instrumental in the 11th Circuit Court of Appeals decision in favor of the deaf defendant Harold Crane to find that Palmetto General Hospital had intentionally discriminated against the plaintiff, reversing summary judgment on plaintiff's claim of ineffective communication during involuntary commitment proceeding under deliberate indifference standard (*Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1135-36 (11th Cir. 2018).

111.    As a result of Defendant's actions, Plaintiff has been damaged and has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from enjoying the programs, services and activities offered by the City of St. Augustine government to residents and visitors (through the knowledge gained from its electronic service documents and through participating in the government of the City of St. Augustine).

112.    An award of monetary damages under Section 504 requires showing of intentional discrimination/deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d

1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely [knowledge that an accommodation is required], and a failure to act upon that likelihood." *Id*. at 1139; *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir. 2002).

113.    Plaintiff is entitled to damages pursuant to Section 504 because of Defendant's deliberate indifference to the inaccessibility of the electronic documents it provides to the public, despite Plaintiff's March 5, 2019 request for accommodation.

114.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant City of St. Augustine.

115.    For all of the foregoing, Plaintiff has no adequate remedy at law

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Joel Price hereby demands judgment against Defendant City of St. Augustine, Florida including a declaratory judgment, pursuant to Rule 57 of the FRCP stating that the Defendant's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act to permanently enjoin the City of St. Augustine, Florida from any practice, policy and/or procedure which will deny Plaintiff equal access to the services, programs and activities offered by the City of St. Augustine, Florida to residents and visitors and in participating in the government of the City of St. Augustine, Florida as well as:

a)      issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by Title II of the ADA and Section 504 of the Rehabilitation Act;

b)    The Court enter an Order requiring Defendant to update all electronic documents made available to the public to remove barriers in order that individuals with visual disabilities can access the electronic documents to the full extent required by Title II of the ADA and Section 504 of the Rehabilitation Act;

c)    enter an Order pursuant to 42 U.S.C. §12188(a)(2) for permanent injunction which directs Defendant to take all steps necessary to bring the electronic documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all electronic documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

d)    Order Defendant to retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its electronic documents, so they are accessible to individuals with visual disabilities who require those electronic documents to be in accessible format or provided in HTML format;

e)    Order Defendant to engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's electronic documents to be accessible to individuals with visual

disabilities who require those documents to be in accessible format or provided in HTML format;

f)    award damages in an amount to be determined at trial;

g)    award Plaintiffs' reasonable litigation expenses and attorneys' fees; and

h)    award such other and further relief as it deems necessary, just and proper.

Dated this 13th day of June, 2019.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
Email: inbox@dininlaw.com

*s/Juan Courtney Cunningham*
Juan Courtney Cunningham, Esq.
J. Courtney Cunningham PLLC
8950 SW 74th Court, Suite 201
Miami, Florida 33156
Tel: (305) 351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*